**IN THE COURT OF APPEALS OF IOWA**

No. 20-0211
Filed June 3, 2020

**IN THE INTEREST OF A.K.,**
**Minor Child,**

**H.K., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Jefferson County, William Owens,

Associate Juvenile Judge.


        A father appeals the order terminating his parental rights to one child.

**AFFIRMED.**


        Larry Brock, Washington, for appellant father.

        Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

        Katie E. Lujan of Lloyd, McConnell, Davis & Lujan, L.L.P., Washington,

attorney and guardian ad litem for minor child.


        Considered by Doyle, P.J., Schumacher, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**BLANE, Senior Judge.**

A father appeals the termination of his parental rights to his eleven-year-old daughter, A.K.  The sole issue on appeal is the father's contention he should have been given additional time before termination because he believed he would be paroled from prison soon and would be able to take custody of A.K.[1]  On our review of the record, we find insufficient reason to believe the need for removal will not exist in six months, even if the father is released from prison.  Therefore, we affirm the termination order.

We review juvenile court proceedings de novo.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  The juvenile court's fact findings do not bind us, but we give them weight, particularly on credibility.  *Id.*  Our primary concern is the best interests of the child.  *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

A.K. first came to the attention of the department of human services (DHS) in September 2018 due to her mother's substance-abuse issues.  A.K. is placed in a foster family with the mother's other children—A.K.'s three sisters.  All reports

---

[1] In his petition on appeal, the father makes two remarks regarding the services provided to him by the department of human services (DHS) and whether it would be in A.K.'s best interests to terminate his rights.  Those arguments are not sufficiently developed to address.  Even on an expedited briefing schedule, a party waives an appellate argument by failing to identify the specific issue, cite to authority, or cite to the record.  *See Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 431 n.2 (Iowa 2002) (holding random mention of an issue without elaboration or supporting authority fails to preserve the claim); s*ee also Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments."); Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

are that she is doing well and is bonded with her siblings. The foster parents are interested in adopting all four girls.

By the time of the termination hearing in January 2020, the mother had not successfully completed the case plan, and the court terminated her rights. She does not appeal.

The father has been incarcerated in Texas since 2016; he is serving a five-year prison term. At the hearing, the father testified he would soon be released from prison and would be able to take custody of A.K. He planned to remain in Texas while on parole. The juvenile court found A.K. could not be returned to the custody of either parent at that time, terminating both their rights under Iowa Code section 232.116(1)(f) (2019).[2] It also found, "[T]here is no evidence additional time would in any way allow [A.K.] to be returned to the custody of either parent." The court noted the father might be released soon but it was the second time he had been incarcerated and he would be paroled to the state of Texas.

To continue a child's placement for an additional six months, Iowa Code section 232.104(2)(b) requires the court to determine the need for removal will no

---

[2] Under that code section, termination is appropriate where the State shows by clear and convincing evidence each of the following:
>    (1) The child is four years of age or older.
>    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

longer exist at the end of the extension. At the termination hearing, the father testified over the phone from prison in Texas. Although he had a relationship with A.K. before his incarceration, he has been in prison since 2016 on a five-year term. He stated he would be seeing the parole board later that month. He testified he had served eighty percent of his sentence and predicted he was "more than likely" to be given parole. His contact with A.K. after the child-in-need-of-assistance case began has only been through letters. A.K. wrote a few letters back to him. Upon release, he planned to reside in a house he inherited in north central Texas with his mother and grandmother living nearby. He testified if he was released that month, he would have a residence and transportation. He planned to get a job and be able to take care of A.K. within six months.

The record does not contain much information about the father's relationship with A.K. before his incarcerations in Texas. He testified he had "been in and out of [his] daughter's life." The current incarceration is the second time he has been in prison during A.K.'s lifetime. He testified the mother and her current boyfriend are the ones who raised A.K. But the father tried to see her for birthdays or other occasions—he estimated he saw her once every three months. He felt if A.K. was returned to him, he would not need additional DHS support—that family support in Texas would be sufficient.

At the hearing, the family safety, risk, and permanency (FSRP) coordinator testified about her difficulties in contacting the father. She found it hard to get through to him at the prison in Texas despite several attempts over several months. She explained there were few services she could realistically offer him other than phone calls. But she sent him copies of the FSRP reports. She also

reported the foster parents received letters for A.K. from the father and A.K. was able to send letters back. Finally, the FSRP provider testified the father could not resume care of A.K. at that time due to his ongoing incarceration. She also believed, beyond the letters, he had no existing relationship with A.K.

The DHS case manager also appeared at the hearing. She testified her search of the Texas Department of Criminal Justice website turned up a projected release date for the father in 2021 and stated he was not in a parole review process. She also testified the father is not an appropriate placement for A.K. at the present time. Nor did she believe circumstances were likely to change within the next six months.

We conclude there is insufficient reason to believe the father will be in a position to take care and custody of A.K. in six months, obviating any justification for an extension. *See* Iowa Code § 232.104(2)(b). Although the father testified he will be released on parole soon, there is no clear evidence in the record that his assertions are accurate. A Texas corrections website placed his release date in 2021 and does not indicate he is under any parole process. Even if we were to credit the father's testimony about meeting with the parole board, we do not know whether they would decide to parole him.

And even if we credit the father's assertion he would be released, we have almost no information about what kind of care he could provide for A.K. because he has never parented A.K. A parent's past performance gives insight into their future ability to provide care. *See In re L.L.*, 459 N.W.2d 489, 493–94 (Iowa 1990). Unfortunately, in the father's case, there is no positive information about his ability to parent—he voluntarily left the parenting of A.K. to the mother. He has been

incarcerated in another state for much of her life.  Their current relationship is in the form of letters.  Nothing in the record gives us confidence the need for removal will no longer exist at the end of six months.  Consequently, we affirm the juvenile court order.

**AFFIRMED.**